I'm fine, okay, whatever you want to do. Our third case is number 16-14364, Anne Marie Bergin et al. v. Mentor Worldwide LLC et al. Ms. Honeycutt. Yes, sir. May it please the Court, Your Honor. My name is Allison Honeycutt, and I'm here on behalf of Anne Marie Bergin with my colleague Beau Darley. We're here from the Beasley Island Law Firm in Montgomery, Alabama. Your Honors, I'd like to address with the Court that in the order of the Court below, we clearly presented, through evidence of our client, a genuine issue of material fact. The Court below clearly weighed evidence, and I would point you to page 10 of the Summary Judgment Order. And on page 10 of the Summary Judgment Order, the Court specifically states that Ms. Bergin and Ms. Fudge reached a conclusion that their injuries were causally related to the OB tape at the time that they had their removal surgeries. In addition to that, the Court below said that my client could not, quote, seriously dispute that she causally connected her injuries to the OB tape at the time that her physician, Dr. Keith Grisham, told her that her body was rejecting the OB tape. Your Honors, we seriously dispute those facts, and we believe that the evidence of record from our client, Ms. Bergin, shows that, number one, she had no reason to suspect until she saw a television advertisement that her injuries were causally connected to the OB tape. And that appears in her deposition testimony at Document 41-4 of the Record on Appeal. In addition, our client clearly testified in her deposition that no doctor ever told her that her symptoms, which included vaginal bleeding and also discharge, were related to the OB tape. Her physician, Dr. Grisham, who is a board-certified obstetrician and gynecologist and performed her surgery, stated in his deposition very clearly that he had no reason to suspect or no knowledge to pass along to Ms. Bergin that her injuries were related to the OB tape. And could you help me just with a fundamental fact I should know, but I don't. What is the underlying basis of your suit against the maker of this product? What are you saying was wrong with the product? We allege that the product was defective, Your Honor, in that it had pore size that was too small in order to allow tissue integration and tissue in-growth. It had what size? Pore size. The size of the pores in the particular mesh product, Your Honor. And we're alleging that the company is strictly liable for that. We've also alleged that... So wouldn't she sort of be on notice when these problems are happening? Who knows what the reason is, but one thing that happened was that this, are we calling it tape? Is that what it's called? It's called a tape, yes. The tape was inserted that there could be something wrong with the tape or that there, I mean, that's a possibility, is it not? Well, Your Honor, that's one of the fundamental reasons that we believe the court below misapprehended her testimony. Just because your body is rejecting the tape does not... I'm not talking about what she thinks. I'm talking about what the reasonable person would think. You don't know you've had a procedure, something's, a foreign object's been inserted into you. Would one not reasonably think, you know, maybe you reject it, maybe the surgery was done improperly, or maybe there's something wrong with a foreign object? Well, Your Honor, what she has to appreciate in that situation is under the Texas discovery rule, she's got to determine what, in fact, is causal connection. And so, Your Honor, we looked to the Supreme Court of Texas for that. They decided in the Childs v. Haseker case what a causal connection was. This court also had the opportunity to determine what a causal connection is in the Rogers consolidated appeal. And this court specifically held that where a patient's own physician does not recognize that there's a causal connection between a product and the injuries that that person is complaining of, that there can be no causal connection. And what is her testimony that the possibilities, if she never, ever thought there was something wrong with a foreign object, what she thought had gone amiss? What was the evidence on that? She thought that her body was rejecting the tape. It was a host response from her body, Your Honor. She did not believe that there was anything wrong with the tape. Just because her body was rejecting it doesn't mean that the tape itself was the origin of the problem. There could have been any number of other problems. As Dr. Grisham testified in his deposition, the problems with the tape could have been related to early intercourse, to trauma, to poor wound healing, or infection. So, Ms. Bergen testified very clearly in her deposition. But it should have also been the tape. That's a lot of causes. Couldn't one reasonably think, that piece of tape he inserted, something's wrong with it? But, Your Honor, the fundamental question is, did the court below weigh the evidence and determine that my client should have known that there was a causal connection between the tape and her injury? And we believe that the court improperly weighed evidence. At a minimum, we believe that we showed a genuine issue of material fact between the testimony of both Ms. Bergen and the testimony of her physician. Was the tape replaced? Sir? Was the tape replaced? No, sir, it was not. No, it was not replaced. Part of it was removed, right? Part of it was removed. I couldn't get it all out. Part of it was removed. Yes, ma'am. And that's the fundamental problem. These tapes can never be fully removed. Only the arms of the tape, or actually the actual body of the tape, can be removed. The arms are placed in a space in a woman's body that actually the physicians normally cannot reach. So, in this particular case— It wasn't the tape, but she just had a bad doctor, and the doctor messed up. But she never considered that the doctor made a mistake because she thought, you know, her body was rejecting the tape. So, would she also be able, five, six years later, to see the doctor because later on she decided, I think the doctor's the one that messed up? Would she get out of the statute of limitations based on that? Well, Your Honor, in order to make that determination, you have to look at Texas law, and it provides under Section 16.003 that an individual, a personal injury action, accrues when an individual knows the nature of their injury. And in this particular case, Your Honor, she—let me back up and consider your question again. Isn't it knew or should have known? Yes, Your Honor. The standard is whether the individual either knew or should have known at the time of the injury. And in this particular case, if you look back at the Childs v. Hosaker case, this Court looks to the Texas Supreme Court to determine what the causal connection is. In that case, two individual employees filed a lawsuit alleging that they had sustained silicosis as a result of an occupational exposure. And what the Texas Supreme Court did was they specifically looked at what those employees knew and when they knew it based on what their doctors told them. And the Court specifically found that with regard to Mr. Hosaker, he went to his doctors and told his doctors, I believe I may have silicosis. And two of his physicians rejected that and told him that they did not. And so what the Texas Supreme Court said in that case is that reasonable minds could differ as to when this particular individual came to the conclusion that there was a causal connection. And so we submit that that should be the same standard that applies in this case. And furthermore, it's not necessary for this Court to reach a conclusion as to whether Texas requires a wrongful conduct element in their causal connection discovery rule. And the reason that we say that, Your Honors, is because of the fact that in this case, this Court can reach a decision that reversal and remand is warranted based exclusively on how the Rogers decision defined causal connection and also on the fact that we have presented the genuine issue of material fact. Your Honors, under the Texas, or under the matters appealed in this case, the defense has brought up . . . Hold on. Let me interrupt you for a second on that same train of thought. The mentor argues, at least in part, that there are some Fifth Circuit cases applying Texas law that sort of either cut back on childs or apply childs in a way that is contrary to your interpretation. Your Honor, one of the cases I believe the Court is talking about is the Porterfield case. And in the Porterfield case, that was the Western District of Texas that had to make a determination as to when an individual's cause of action accrued as a result of the implant of hernia mesh. And in that particular case, Miss Porterfield actually went to her primary care physician and talked to her doctor about her suspicions that her hernia mesh could be causing her problem. And in that case, she also did some of her very own research. And the Fifth Circuit and the Court below held that she had knowledge of an association between her hernia mesh and her problems the day she sat down and wrote a letter to her surgeon who implanted the hernia mesh. That is not the case here, Your Honor. We do not have any letter that our client has written to her physician expressing concern about it. Ms. Bergen had no knowledge of any problems with the Optape until the time that she saw the television advertisement in January of 2011. Or excuse me, in November of 2011. We're also here before the Court today, Your Honor, to argue the standard of review. And the standard of review in this case, whether this Court looks at the decision under Rule 59E, Motion to Alter or Amend, or under De Novo, Review of the Summary Judgment, we submit that we satisfy the requirements under both of those. Specifically, with regard to abuse of discretion, that is the standard that the Court must use in order to determine whether the Motion to Alter or Amend was wrongfully denied. And according to this Court in Alexander v. Fulton County in a 2000 case, under an abuse of discretion standard, a clear error of judgment requires reversal. And Your Honors, we submit that there is a clear error of judgment in this case. The Court below said that my client should have known about her revision at the time that it occurred and she should have known there was a causal connection at that point. My client clearly testified that she thought the revision was to treat her symptoms, not a defect in the Optape. The Court below clearly said that my client couldn't seriously dispute that her injuries were related to the Optape when she knew that her body was rejecting it. Ms. Bergen specifically testified at Document 41-4 in the Record on Appeal that she believed her body was rejecting the Optape and not that there was anything wrong with the sling. We submit, Your Honors, that under Texas law, a causal connection cannot exist where a patient's own doctor does not realize that the product is causally connected to the injuries that they sustained. And we also allege, Your Honor, that at a minimum, this Court should find that the Court below improperly weighed the evidence and reasonable minds could differ about when Ms. Bergen reached the conclusion that her injuries were causally related to the Optape in question. We've also alleged, Your Honors, under the matters appealed that there is a clear intent to appeal the summary judgment order based on our underlying complaint. We essentially would ask the Court to look at the public policy reasons for our motion to reconsider and why we specifically appeal that. Your Honors, in this particular case, if you look at the District Court's ruling, it's clear that the Court in April of 2016 made a ruling that applied to both Ms. Fudge and Ms. Bergen. And we wanted to make clear to the Court in our notice of appeal that we were appealing only as to Ms. Bergen. Ms. Fudge is not a client of our firm. Ms. Fudge's facts are different from the facts of our case. Her doctor actually told her that her Optape was causally related to the injuries that she'd sustained. We submit, Your Honors, that the appropriate ruling from the Court in this case would be a reversal and remand based on the arguments we presented today and in our briefs. May it please the Court. All right. Thank you very much. You've saved your time for rebuttal. Mr. Lewis. May it please the Court, Your Honors. John Lewis for the Applebee Mentor Worldwide LLC. Your Honors, this Court should affirm the District Court's denial of plaintiff's motion to reconsider. There was no abuse of discretion by the District Court. There was no new evidence brought forward in that motion to reconsider and there was no manifest error of law in the Court's decision. But doesn't that notice of appeal, like every notice of appeal from a final judgment, bring up everything that preceded it? It does not, Your Honor. Why not? Because the law is very clear that this Court's jurisdiction is limited to the description within the notice of appeal. That's not a flat-out rule. In the Osternett case, this Court in the Eleventh Circuit said that this Court may only review the scope of what's identified in the notice of appeal. In the White v. State Farm case. But that can't be completely descriptive because if you appeal a final judgment that says final judgment in favor of X, nothing else, that brings up everything that preceded the final judgment in favor of X. Not necessarily, Your Honor. You're telling me that if you have a verdict against you after a full-blown jury trial  and you appeal the verdict, you can't appeal the district judge's evidentiary rulings at trial even though you didn't mention them in your notice of appeal? For sure you can. You can't appeal the jury instructions? Absolutely. That's all tied in with the final judgment. Those are errors that are in connection with the trial that led to the final judgment. But you cannot appeal the Court's denial of a summary judgment motion. But that's not for that reason. That's because the Supreme Court has said that you don't get to appeal summary judgment denials post-verdict. It's not for the notice of appeal reason. Sure, but I think it's consistent with the same policy. But a motion to alter or amend the judgment under Rule 59, if it's timely filed, tolls the time for appeal, does it not? It tolls the time, but the notice of appeal still has to identify the order upon which you're appealing. If it just says we appeal, would that have been enough to bring everything up? Possibly. But here, in this case, they were very descriptive about what they were appealing in the notice of appeal. And we have the White v. State Farm case that is exactly on point. In that case, the notice of appeal said we are appealing the order on the motion to reconsider, and there was a prior summary judgment order, and this Court found, White v. State Farm, page 864, there's no jurisdiction to look at that summary judgment order. We're limited to the scope of the notice of appeal. They didn't have to. I'm sorry, Your Honor. Go ahead. They didn't have to formulate the notice of appeal the way they did. They could have said we appeal generally. They could have said we appeal both orders. But when they chose in the notice of appeal to appeal only the order denying motion to reconsider, that limited this Court's jurisdiction. Isn't that the order that makes us a final judgment? No. They could have appealed the order. Once you file a Rule 59 motion, you have to wait for a ruling on that Rule 59 motion to have a final judgment, do you not? To have a final judgment? Yes. I don't think so. I think that the final judgment is ordered. It has to because the Rule 59 motion tolls a time for an appeal, meaning that there is no final judgment until that motion is disposed of, right? The District Court granted inner judgment after the summary judgment was granted. But the motion tolls the finality of that judgment, does it not? I believe it. I'm not sure if it tolls the finality of the judgment or the time for an appeal. And I think that's a distinction. But the important point is, is that the notice, it doesn't matter what the motion itself did, it's what the notice of appeal said in this case. The notice of appeal in this case said, But isn't it true that from the Nichols case an exception to all this applies if it's readily apparent on the face of the notice the overriding intent to appeal, where the Rule 59 motion was intertwined with the summary judgment arguments, where there was no reason to appeal, only the motion to reconsider, not Rule 59, which was that case, and where you're not misled or prejudiced. You weren't misled or prejudiced by this, were you? In fact, when they filed their brief, you know what their arguments are, don't you? Well, I know what their arguments are, but I don't know that they're, I think when the notice of appeal says we're appealing the order on the motion to reconsider, that's what we thought they were appealing. But you're spending so much time on this, it just makes me wonder if you're concerned about the merits of your argument. I'm happy to talk about the merits, Your Honor. That might, from my point of view, that might, I don't know, I don't speak for my colleagues, that might be a good idea. I want to make sure I answer the Court's questions first. Your Honor, there were four on-point cases interpreting Texas law, including one by this very same judge, granting or affirming summary judgment in virtually identical circumstances involving a product liability claim for a medical device. In this case, in Ms. Bergen's case, in both March and September of 2006, seven years before she filed her lawsuit, she went to the doctor who implanted a medical device, and that doctor had several discussions with her about the nature of what she was experiencing and said we need to remove this device, and in fact, indisputably testified that he would have told her many more things than what Ms. Bergen even says she believed he did tell her. Indisputably, Dr. Grisham testified that he would have told her, and in fact believes he did tell her that he had a conversation with her that the exposure of the mesh required surgery and she needed to be treated and have the mesh removed. I know, but this is at a summary judgment posture, so what the doctor says he related to her is not really all that important. What really matters is what she said he told her. What actually matters is what he had knowledge of at the time and would have told her. No. Yes, Your Honor, and may I? No, let me get a word in edgewise, and then you can respond. I'm not disputing legality with you or the applicable legal principle. I'm saying the facts that matter at summary judgment are what she says the doctor told her, not what the doctor says he told her, right? No, Your Honor. May I explain? Sure, of course. Because the standard in Texas is what you knew or reasonably should know or have known to trigger the statute of limitations, and Dr. Grisham says indisputably, unchallenged testimony, that whether he told her or not, he would have told her who the manufacturer of the device was, that her injuries were connected to the Optape mesh, and that she had to have the mesh removed because of the Optape complications that she was suffering. But what did she say he told her? She says two different things. That's what matters. It doesn't matter what she says. It's what she really – No. Okay. I understand that it's a no or should have known standard. I got that. I understand that's what Texas law is. Right. But at summary judgment, the facts that we have to apply that legal standard to are the facts, the underlying historical facts and inferences in the light most favorable to the nonmoving party, and that's your opponent in this case, right? Correct. So you have to take at face value, unless there's a document that completely contradicts her testimony that she signed or something, you've got to take her version of that conversation with her doctor, do you not? Not in this case, Your Honor. You've really lost me in a summary judgment posture. If she says the doctor told me, listen, you have a problem, but it might be that your body just rejected the tape, nothing else, so we've got to remove it. It says nothing about whether or not the product is problematic, whether there are issues with it or anything like that. It just says it looks like your body just rejected it. That happens in 2% of the time. It looks like you're one of those unfortunate 2%. We have to remove it. According to her, that's all the doctor told her, nothing else. The doctor says, I told her that doctors around the country had been having problems, that there had been complaints against this manufacturer, that the literature was starting to show that there was some product defect and all of that. Whose version do we take for summary judgment? Here's the difference, Your Honor. The doctor in this particular case, Dr. Grisham, did not affirmatively mislead the plaintiff. I'm not asking you that question, with all respect. I want to know in my hypothetical, because if not, you and I are at very different points at the summary judgment stage. Understood. Whose version of events?  Got it. But whose set of facts do you accept at summary judgment? Hers or the doctor's? I think the plaintiff's version of events are more favorable to her, so you accept them in that instance. Of course. So here what matters is what she said the doctor told her. Now, there may be other things that show that she should have known. But in terms of, I guess what I'm trying to get you to agree, maybe you won't agree, is that insofar as that conversation between doctor and patient is concerned, what controls is what she says transpired, not what he says transpired. If it's more favorable to her. Yes, and here it was. I'm not sure it is. Well, tell me what she said. She just says that she doesn't recall anyone telling her that it was connected to the mesh. In the light most favorable to her, that means that she wasn't told, because you would think that a human being undergoing those sorts of problems would remember that sort of statement. Now, it's a self-interested statement, understood, but that happens all the time at summary judgment. Sure. She wasn't told by the doctor, but she also testified that she knew the mesh was being removed because it was causing her injury. But how do you know the reason for the problem? Because child says that you have to know not only the injury, but that it was likely caused by the wrongful act of another. So if her body rejected the ob tape or if the doctor had committed malpractice in placing the ob tape, that's not the wrongful act of mentor, is it? The wrongful act in a product liability lawsuit is that the product caused the injury. And that is well established. No, no, no, no. Absolutely. The child. Sorry, Your Honor. If there is a reason for removing the ob tape that is different from a product defect, she's not on notice. Or there's an argument that she's not on notice, that it's a product defect that caused the problem, right? She is on notice. If they tell her your body rejected it, there's nothing if they told her you're there's nothing wrong with the tape itself. It's a great product. But your body just rejected it. Some people reject medications and devices. Would she have been on notice? She's on notice once she learns that the product was causing her injury under Texas law. That's the law. The cootie, even if they tell her that it's not the product itself, but it's her body that's causing the problem that is rejecting it. If they tell if they tell her that it's something else. Yes. Your body's rejecting it. That's my hypothetical. That's the same thing. No product is causing the injury that is occurring. This and that's that's why the district court was correct here. The plaintiff admitted that her body. She understood that the mesh was being removed because it was causing the problem. Her body was rejecting it. That's a link between the product and the injury. That's all that's required under Texas law. Tell me what you're bad to me. This case is going to come down to what is Texas law, which is confusing. Correct. So you have the kind of environmental work issues from child. Then you have some other language suggesting, well, you don't have to know that what caused it was done caused by wrongdoing. You just have to know the phenomena that caused it. Tell me what your best couple of Texas cases are. There are three cases that are right on point, Your Honor. Number one, the Kuti case, 696. You don't have to give us a sign. The Kuti case, which is a Texas appellate court case, that involved a medical device, an IUD. The plaintiff met with her physician, understood that the IUD was causing her injury, and it was removed. Seven years later, she saw a newspaper ad and then argued that that should be the trigger for the statute of limitations. The appellate court said, no, it's when you sat down with your doctor and the IUD was connected to your injuries. That's number one. Number two is the Porterfield case. That involved a medical device, a mesh. The plaintiff had actual knowledge that the problems related to her mesh. Yes, she did independent research on her own, but that wasn't the critical point in the decision. The critical point was that she sat down with her doctors, the very same ones who implanted the device, and understood that there was a connection between the mesh and her injuries. Number three is the Pavich-Zimmer case from the Fifth Circuit. And by the way, all of these cases affirmed summary judgment that was granted by the trial court. In the Zimmer case, the plaintiff had a rod in, I believe, a leg or an arm, had some pain. During the time that the plaintiff had the pain, that did not trigger the statute of limitations. What triggered the statute of limitations was when that patient went to the person implanting the rod and sat down and looked at an x-ray, and the doctor said that the rods are causing your pain and need to be removed. Summary judgment affirmed. And importantly, in none of those three decisions, Your Honors, none of them did the court say, we need to look and see if there was some wrongful conduct by the defendant. Did they know of something related to their product? Did they know of literature or science or internal communications showing that their product was defective or anything along those lines? That was not part of any of this analysis in any of these three cases where summary judgment was affirmed. Why do you think on the other side of the ledger, because those cases do support your position, that the district court in West Virginia is getting these cases wrong? I don't think the district court got them wrong, Your Honor. West Virginia? In West Virginia. In West Virginia, I think it was a close call. They didn't have the facts in those cases. They didn't necessarily have the facts in those cases that we have here. There's an argument that the court didn't get it wrong because the plaintiff didn't exhibit the type of understanding. No. Here's one of those West Virginia cases. Ethicon argues, and this is the argument that the district court rejects. Ethicon argues that Ms. Durham was aware that her mesh products may have caused her alleged injuries no later than July of 2008, the date of her surgery during which her eroded mesh was removed. When doctors informed her multiple times that the mesh had eroded and that the erosion was a potential complication of the June 2007 surgery. And Ms. Durham also believed that the mesh caused pain and discomfort during intercourse on multiple occasions in 2008. So despite all of that, the district court denies summary judgment. I would think, whether you think that is right or wrong, that it goes against your position. So there are two decisions from Judge Goodwin in West Virginia. There's one where it's a closer call. There's a case called Hovey and then there's a case called Durham. And then in the case that Your Honor just cited, I think those facts suggest that summary judgment should have been granted. Judge Goodwin got that decision wrong. I just didn't follow Texas law. I'm not sure that Judge Goodwin cited the same cases. He did. Well, he didn't cite all of them, but he cited Childs and one of the Fifth Circuit cases. Right. He didn't cite them all. You're correct. And so Childs is a workplace exposure case, and that's why it's different than a medical device case where you have a very specific doctor who implanted a medical device and you go back to that same doctor and that doctor says that thing is being caused by the very thing that I implanted. That triggers the statute of limitations versus what I would call an amorphous workplace injury situation where over time you may have worked somewhere for 10, 15, 20 years and you're not sure if silicosis could be caused by some other environmental concern or your workplace. And the district court below went through and distinguished those cases and said in Texas, product liability cases, particularly medical device product liability cases, have analyzed the statute of limitations in a very uniform way. When you go to your doctor and get a diagnosis connecting the product to the injury, that triggers the statute of limitations. However, in other cases that don't involve product liability claims, it's murkier because the trigger could be different. It's not going to a doctor with knowledge that that's a device that's been implanted in your body and asking if that complication or trying to determine whether that complication was connected to the product. All right. Thank you very much. It's been very helpful. Thank you. Ms. Honeycutt, you've got three minutes left. May it please the court. With regard to all of the cases cited by the court below in the summary judgment order, the Texas cases, every single one of those cases, Your Honors, found that there was a genuine issue of material fact that had been presented and the reversal was warranted. Your Honors, I would like to address the— Wait, wait, wait. You're saying that the cases he's citing? He's citing summary judgment. It was granted. Right. No. I'm talking about in Judge Land's order, every single Texas case that he cited to go through and articulate what the rule of law is in Texas, the Gaddis case and the other cases. In those cases, summary judgment, the court found that there was a genuine issue of material fact in those cases. And let me go— That doesn't tell us anything, though, about rule of law. I don't know what that means. Well, let me refine my argument, Your Honor. In the Childs v. Haseker case, we submit that that case does stand for what Texas is— What about the closer factual cases? Tell us why the cases he cited, the three he gave us, why those shouldn't control this decision. The Pavich decision, Your Honor. In that case, the doctor had rods implanted in his back, and he was specifically told by his physician, who did a diagnostic study, that the rods had broken. We submit to you that under Texas law, a causal connection was made between the injuries suffered by this individual and the product that had been implanted. And we submit that Childs v. Haseker is applicable to the court— Could you distinguish his other two cases? That's what he's relying on, those three cases. Porterfield. Yes, ma'am. I did distinguish the Porterfield case. And the Porterfield case was where the lady went to the doctor, and she wrote a letter to her physician, the physician who implanted the hernia mesh, and told that doctor that she and her primary care physician suspected that the hernia mesh may be causing her problem. She also did a lot of her own research, Your Honor, and she determined that her body's inflammatory response could be responsible for her condition. We don't have any of those facts. What you're saying is your rule, should know, favors the incurious and the person who asks no questions. So if you're a little more diligent as a patient, you ask your doctor more questions, you go on the Internet, then you're stuck. But if you don't ask, same facts, you know you had mesh or tape inserted, you know you've got problems, you know there are a variety of causes, but you ask no questions, then you get the benefit of a very generous statute of limitations dependent totally on whether you watch TV or not. Well, Your Honor, these are patients going to see medical doctors, and I think what's important is what the medical doctors tell these individuals. And as this court decided in the Rogers case, if a patient's own board-certified physician cannot reach the conclusion that there's a relationship between the injury and the device that has been implanted, then we shouldn't hold a patient to a higher standard than we're going to hold their board-certified doctor who went to medical school. And that's the issue, Your Honor. What is a causal connection in this case? And we submit to you, Your Honor, that the causal connection standard in Texas cannot be met in this situation where the plaintiff testified that the doctor never informed her that there was a problem with the device. And, Your Honors, I'd just like to point out that the testimony cited by counsel for the defense with regard to— well, I see that I'm over my time, Your Honor. You can wrap up. You have about 15 or 20 seconds. The testimony cited by the defense with regard to what Dr. Grisham allegedly told my client is based on a question that was asked by counsel of Dr. Grisham. And the question at the bottom of page 41-5 of the brief is, does it appear then on three separate occasions prior to your March 22nd surgery with Ms. Bergen, you would have discussed with her that she was having a problem with her Optate mesh sling and the recommendation was to operate on her to remove that piece that was exposed? And here's the answer. Again, I discussed with her her options. One of the options was excision of the mesh. So, yes, on several occasions we would have had that discussion. Your Honors, that does not stand for the proposition that Dr. Grisham ever told this patient that there was a problem with her mesh. As a matter of fact, in his testimony, which is very clear, he testified that he never told her that there was a problem with the mesh. Let me ask you one more question. Again, this case comes down to me on what Texas law is. And I agree it's somewhat confusing. Different signals are given. Should we certify this question to the Texas Supreme Court? Well, Your Honor, we take the position that it's not necessary for this court to do that in order to decide this case under simply a causal connection standard. You don't even have to address whether Texas has a… But he cited three cases that are favorable to his position. I think a couple of them are courts of appeal cases. We've had different signals from the Texas Supreme Court. Should we try to get clarification? Your Honor, in order to reverse the judgment of the trial court in this case, it's not necessary to delve into Texas law to determine whether they have a wrongful conduct element. This court can make the decision simply based on what is or is not a causal connection under Texas law. Yes, Your Honor, you could certify the question if that was something that the court wanted to do. But I submit to you that you don't have to make the determination as to whether there's a wrongful conduct element. What this court has held in the Rogers case regarding causal connection, which was a determination of a Minnesota statute of limitations, which is very similar to the Texas statute of limitations. Thank you, Your Honor. All right. Thank you very much. We're in recess until tomorrow morning. All rise. Thank you.